# IN THE COURT OF APPEALS OF IOWA

No. 21-1469
Filed March 30, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOHN SCOTT MILLER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Gregory D. Brandt, District Associate Judge.

John Miller appeals the district court's finding that he refused chemical testing requested in accordance with Iowa Code section 321J.6 (2021). **AFFIRMED.**

D. Brian Scieszinski of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**VAITHESWARAN, Judge.**

"A person is not eligible for a deferred judgment under section 907.3 if the person has been convicted of a violation of [operating while intoxicated] . . . and . . . the defendant refused to consent to testing requested in accordance with section 321J.6." *See* Iowa Code § 321J.2(3)(b)(2) (2021). This appeal implicates that provision.

John Miller was charged with and pled guilty to operating a motor vehicle while intoxicated, first offense. He requested a deferred judgment, which the State resisted. The district court accepted the plea, adjudged Miller guilty, and declined his request for a deferred judgment, instead imposing a one-year jail sentence with all but three days suspended. The court reasoned in part that anything "[o]ther than a[n] unequivocal consent" to chemical testing was "a refusal" and a video depicted Miller refusing the chemical test.

Miller appealed.[1] The parties agree our review is for errors of law. *See State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017) ("We review for 'correction of errors at law . . . when the defendant challenges the legality of a sentence on nonconstitutional grounds.'" (citation omitted)).

Miller argues the district court "erred . . . in concluding anything '[o]ther than a[n] unequivocal consent is a refusal' to submit to chemical testing under Iowa Code section 321J.2" and "erred . . . in concluding" he "refused chemical testing requested in accordance with Iowa Code section 321J.6."

Section 321J.6 states:

---

[1] Miller has good cause to appeal his sentence. *See State v. Damme*, 944 N.W.2d 98, 104 (Iowa 2020).

> A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 or 321J.2A is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens . . . . The withdrawal of the body substances and the test or tests shall be administered *at the written request* of a peace officer . . . .

(Emphasis added.) In Miller's view, the provision requires a signed written consent form and he executed such a form "expressly and clearly indicating he consented to . . . chemical testing."

To the contrary, section 321J.6 simply requires "a written request to withdraw the driver's blood, urine, or breath to determine the specific concentration of alcohol." *State v. Fischer*, 785 N.W.2d 697, 701 (Iowa 2010). The motorist need not be handed or given the written request. *Id.* The "writing" requirement is satisfied if an officer reads from a paper. *Id.* at 704. The writing may also be in electronic format. *Id.* "[T]he officer does not need to call the driver's attention to the request that appears on the screen for the request on the screen to satisfy the definition of 'written.'" *Id.* at 706. It is sufficient that the defendant can see the screen, even if the text containing the request is in "small font and at an angle from [the defendant]." *Id.* at 705; *State v. Madison*, 785 N.W.2d 706 (Iowa 2010). A motorist's signature is not required to satisfy the statutory "written request" requirement. *See State v. Cook*, No. 19-1101, 2020 WL 6157789, at *4–5 (Iowa Ct. App. Oct. 21, 2020) ("The statute does not require the written request be signed by the arrestee, and we do not read a requirement into a statutory scheme when none exists because it is not our province to write such a requirement into the implied consent statute." (cleaned up)).

We have the benefit of video footage in determining whether the "written request" requirement was satisfied. The arresting officer's body camera captured him giving Miller a paper copy of an implied consent advisory and reading the advisory to him from a computer screen. The screen was in Miller's line of sight, but Miller focused on the copy he was given. The officer encouraged Miller to read his copy as the officer read the document aloud and he told Miller any portions could be reread. He afforded Miller the opportunity to seek clarification from his son or an attorney. While the video does not capture the precise language contained on Miller's form, we have no trouble concluding the writing, reading, and paper review comported with the "written request" requirement of section 321J.6 and fulfilled the purpose behind that requirement. *See Fischer*, 785 N.W.2d at 704 ("The written request requirement ensures an accurate and reliable record that a pretest request was made."); *see also State v. Meissner*, 315 N.W.2d 738, 740 (Iowa 1982) ("This [requirement] promotes accuracy and furnishes a record for subsequent review.").

We turn to whether Miller refused a chemical test. "[A]fter a written request is properly given to the driver, a finding that the test has been refused is premised on the statements and conduct of the arrestee and police officer, as well as on all the surrounding circumstances." *Fischer*, 785 N.W.2d at 701 (citing *Ginsberg v. Iowa Dep't of Transp.*, 508 N.W.2d 663, 664 (Iowa 1993)). Contrary to Miller's assertion, a conditional consent or refusal is a refusal to take the test. *See Morgan v. Iowa Dep't of Pub. Safety*, 227 N.W.2d 155, 157 (Iowa 1975); *Swenumson v. Iowa Dep't of Pub. Safety*, 210 N.W.2d 660, 662 (Iowa 1973). The supreme court

underscored that point in *Welch v. Iowa Department of Transportation*, 801 N.W.2d 590 (Iowa 2011). The court stated:

> Our previous decisions establish that a broad definition of the term "refusal" is more closely aligned with the legislative intent underlying the implied consent statute. In addition to explicit, unqualified refusals, we have found that failures to cooperate, conditional refusals, conditional assents, consents followed by a failure to provide the requested specimen, and consents followed by combative behavior all constitute refusals within the meaning of sections 321J.6(2) and 321J.9(1).

*Welch*, 801 N.W.2d at 595–96. "[O]ne refusal is determinative." *Swenumson*, 210 N.W.2d at 662.

Here, there were three. After reading Miller the implied consent advisory, the officer asked, "So John, with that implied consent advisory and everything are you willing to take the chemical test, the DataMaster breath test, with that advisory and everything are you willing to take the test?" Miller asked if he should. The officer answered that he could not advise him. Miller responded, "Then I have to say, I mean, no."[2] He twice confirmed his initial "No" by saying "probably no" and "I pass, I pass."

We recognize the form Miller ultimately signed indicated he consented to withdrawal of a specimen. But the video clarifies that this was a mistake. The officer told Miller he was checking the "refuse" box based on Miller' statement that he wanted to refuse a chemical test. He specifically stated: "Just go ahead and sign there for me, John. Sign that little digital box. That little dotted line, er, up here. I've already marked the refuse box because that's what you said you wanted

---

[2] The record does not contain a formal transcription of the statements on the video. We have done our best to listen and transcribe the pertinent portions.

to do. So if you can go and sign there." Miller signed where he was told. Although his signature appeared following language consenting to the test, the form shows that the "refuse" box was checked.

We conclude Miller refused a chemical test. We further conclude the error on the form that was signed does not nullify the earlier refusals. Indeed, those refusals are dispositive even if Miller did not sign in error but in fact changed his mind. *See Welch*, 801 N.W.2d at 596 ("[O]nce a licensee has refused chemical testing, he is not entitled 'to defeat revocation of his driving privilege by showing he thereafter changed his mind.'" (quoting *Krueger v. Fulton*, 169 N.W.2d 875, 879 (Iowa 1969))). Miller's refusals to undergo chemical testing precluded entry of a deferred judgment. Accordingly, we affirm Miller's sentence.

**AFFIRMED.**