Argued October 27, reversed with directions December 8, 1975

LUNDQUIST, *Respondent, v.* MOTOR VEHICLES
DIVISION (No. 74-2292, CA 4270), *Appellant.*

543 P2d 29

*Al J. Laue,* Assistant Attorney General, Salem, ar-
gued the cause for appellant. With him on the brief

were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Donald J. Wilson,* Eugene, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and FORT and THORN-TON, Judges.

FORT, J.

This is an appeal by the state (Motor Vehicles Division) from a judgment order entered by the circuit court setting aside an order entered by the Division suspending respondent-petitioner's driver's license because of his alleged refusal to take a breath test following his arrest for driving under the influence of intoxicating liquor.

A jury was waived by both parties. Thus the trial court's findings, if supported by substantial evidence, are binding on this court.

The sole witness at the trial was the respondent. He testified:

"Q [On direct examination] Mr. Lundquist, did you at that time refuse to take a breathalizer test?

"A No.

"MR. WILSON: I have no further questions, Your Honor.

"* * * * *

"Q [On cross-examination] You say that the police officer placed you under arrest and took you to the police station?

"A That's right.

"Q And there did he ask you to take a breathalizer test?

"A Yes, he did.

"Q And what did you do?

"A I told him I would just as soon consult with my lawyer first before I decided on taking the test.

"Q So you did not take the test when he asked you?

"A No. But I did not refuse to take it.

"Q Did the police officer then get a green sheet and read to you from that?

"A Yes.

"Q Did he ask you to sign it after he had read to you from it?

"A Yes, he did.

"Q Did you refuse to sign?

"A I told him I did not want to sign it until I talked to my lawyer first.

"* * * * *

"Q Mr. Lundquist, did the police officer advise you that if you refused to take the breath test your driver's license would be suspended for 90 days?

"A Yes, he did.

"Q Did he tell you that upon your request you'd be granted a hearing, and if the hearing result was adverse to you you would—you could appeal the matter to the Circuit Court?

"A I don't recall him advising. But if — I know he read the sheet and if it's on the sheet then he did.

"Q Did he inform you that if you took the breath test you'd be permitted at your request and at your own expense reasonable opportunity to obtain the services of a doctor or surgeon, licensed nurse, qualified technician or chemist, or other qualified person of your choosing to administer a

chemical test or tests to determine the alcoholic content of your blood?

"A. Yes, he did.

"MR. BATES: I have no further questions.

"THE COURT: Re-direct.

"MR. WILSON: No further questions, Your Honor."

It is not disputed that the respondent was under arrest for driving under the influence of liquor and that the officer had probable cause to have arrested him therefor. Respondent contends that the foregoing evidence was insufficient to establish compliance with ORS 482.550(2)(c) and (e).[1]

■ The burden of establishing the failure of the Motor Vehicles Division to comply with ORS 482.-550(2)[2] is upon the respondent. *Burbage v. Dept. of*

---

[1] ORS 482.550(2):

"The scope of the hearing shall be limited to:

"* * * * *

"(c) Whether the person refused to submit to a test;

"* * * * *

"(e) Whether such person was informed of his rights as provided in ORS 483.638."

[2] ORS 482.550(2):

"The scope of the hearing shall be limited to:

"(a) Whether the person at the time he was requested to submit to a test was under arrest for driving a motor vehicle while under the influence of intoxicating liquor in violation of subsection (2) of ORS 483.992 or of a municipal ordinance;

"(b) Whether the police officer had reasonable grounds to believe, at the time the request was made, that the person refusing to submit to the test had been driving under the influence of intoxicating liquor in violation of subsection (2) of ORS 483.992 or of a municipal ordinance;

"(c) Whether the person refused to submit to a test;

"(d) Whether such person was informed of the consequences, under ORS 482.540 to 482.560, of his refusal to submit to the test; and

"(e) Whether such person was informed of his rights as provided in ORS 438.638."

*Motor Vehicles,* 252 Or 486, 450 P2d 775 (1969). In *Burbage* the court said:

"The trial court erred when it placed the burden of proof on the Department * * *." 252 Or at 492.

Here, in its judgment order in favor of respondent, the trial court expressly found that

"* * * [t]he petitioner has proved that there was error on the part of the Department of Motor Vehicles, and the Department of Motor Vehicles * * * failed to prove that the prerequisite steps to suspension of petitioner's license [have] been complied with * * *."

It seems probable from the foregoing that the court erroneously placed the burden of proof upon the Division. *Burbage v. Dept. of Motor Vehicles,* supra. *See also: Heer v. Dept. of Motor Vehicles,* 252 Or 455, 450 P2d 533 (1969); *Stratikos v. Dept. of Motor Vehicles,* 4 Or App 313, 477 P2d 237 (1970), 478 P2d 654, Sup Ct *review denied* (1971).

In *Cavagnaro v. Motor Veh. Div.,* 19 Or App 725, 528 P2d 1090 (1974), we said:

"We conclude that as a matter of law, the voluntary postponement for a specified period of time of the administration of a breathalyzer test by a police officer to enable the driver to contact an attorney does not itself constitute the waiver of a valid previous demand to take the test beyond the time allowed by the officer." 19 Or App at 729.

In *Stratikos* and in *Cavagnaro* we also quoted with approval from *State v. Pandoli,* 109 NJ Super 1, 262 A2d 41 (1970), as follows:

" ' "In any event, the request for consultation with counsel necessarily involved a delay in administration of the test. Having in mind the remedial

purpose of the statute, and the rapidity with which the passage of time and the physiological processes tend to eliminate evidence of ingested alcohol in the system, *it is sensible to construe the statute to mean that anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so.* \* \* \* The occasion is not one for debate, maneuver or negotiation, but rather for a simple 'yes' or 'no' to the officer's request." ' 109 NJ Super at 4." (Emphasis supplied.) 19 Or App at 729.

If it is not clear from those decisions that we adopted the rule as stated in *Pandoli,* above, we do so now. The most that respondent can rely upon here from the evidence to support his contention are his statements, "I told him I would just as soon consult with my lawyer first before I decided on taking the test," and later, with reference to his refusal to sign the "green sheet," "I told him I did not want to sign it until I talked to my lawyer first."

■ Both of these statements are "substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test." Thus we conclude as a matter of law that respondent did within the meaning of the statute refuse to take the test and that he was advised of his rights under ORS 483.638 as required by ORS 482.550(2)(e).

Reversed with directions to reinstate the order of the Motor Vehicles Division suspending respondent's driver's license.